**LAW OFFICES OF NICHOLAS J. PALMA, ESQ., P.C.**
**VALERIE PALMA DELUISI, ESQ.**
1425 Broad Street, Second Floor
Clifton, New Jersey 07013
Phone: 973-471-1121
Facsimile: 973-472-0032
VPD@PalmaLawFirm.com
*Attorney for Plaintiff Antonio Manata*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO MANATA,<br>    Plaintiff,<br><br>  v.<br><br>UNION COUNTY PROSECUTOR'S OFFICE, DAVID HUMMEL, in his Individual and Professional Capacity as Assistant Prosecutor/Legal Chief of the Investigative Division of Union County Prosecutor's Office, and JOHN DOES 1-5,<br>    Defendants. | **Civil Action No.:**<br><br>**COMPLAINT & JURY DEMAND** |

**PLAINTIFF ANTONIO MANATA**, by and through his undersigned counsel, Valerie Palma DeLuisi, Esq. of the Law Offices of Nicholas J. Palma, Esq., P.C., by way of Complaint against Defendants, does hereby state as follows:

## **PARTIES**

1.  Plaintiff Antonio Manata, residing in the Township of Clark, County of Union, State of New Jersey, was employed as a Lieutenant at Clark Police Department until February 28, 2022, when he reached 25 years of service and was thus eligible to retire and begin collecting his pension.

2. Defendant Union County Prosecutor's Office is the chief law enforcement agency in Union County, New Jersey, with its headquarters located at 32 Rahway Avenue, Elizabeth, New Jersey.

3. Defendant David Hummel is an Assistant Prosecutor and the Legal Chief of the Investigative Division of Union County Prosecutor's Office. He is named herein in his individual and professional capacities.

4. John Does 1-5 are individuals whose identities are presently unknown to Plaintiff and who are believed to be employees/agents of Defendants, who have participated as actors, agents, co-conspirators and/or aiders and abettors in the wrongful conduct described in the within Complaint and who thereby caused or contributed to the substantial damage and injury to the Plaintiff.

## JURISDICTION

5. United States District Court for the District of New Jersey has original subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1331.

6. United States District Court for the District of New Jersey has supplemental jurisdiction over New Jersey State Law claims that form part of within case and controversy, pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is properly vested in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391, as Plaintiff Manata and Defendants reside or are headquartered in the State of New Jersey, and the claims herein arose within the jurisdictional limits of United States District Court for the District of New Jersey.

## FACTS RELEVANT TO ALL COUNTS

8. For several years, there has been a pattern and practice of discrimination and harassment at Clark Police Department. This has led to prelitigation settlements with several of Plaintiff's colleagues, including but not limited to Susan Ricci, Martin Venezio, Steven Francisco and Eric Richter.

9. Through evidence obtained by the aforementioned individuals, Plaintiff learned that he, too, was being targeted for discrimination by high-ranking members of Clark Police Department. In addition, Plaintiff suffered ongoing harassment at the hands of these same individuals.

10. Clark Township's Policy Prohibiting Discrimination, Harassment or Hostile Work Environment in the Workplace states "Employees are expected to document all incidents of prohibited discrimination/harassment in order to provide the fullest basis for investigation."

11. In order to document the incidents of prohibited discrimination and harassment, and thus prove his own discrimination claims, Plaintiff Manata began recording his conversations with Clark Township Mayor Salvatore Bonaccorso, Chief of Clark Township Police Department Pedro Matos, Clark Police Department Captain Vincent Concina and Clark Police Department Internal Affairs Sergeant Joseph Teston.

12. In **September 2019**, Plaintiff contacted the Professional Standards Unit of Union County Prosecutor's Office and advised them of his intention to file a Complaint. In response, Plaintiff was cautioned against proceeding with a complaint against the Township of Clark or any of its officials. Specifically, Plaintiff was advised that Union County Prosecutor's Office

("UCPO") could not promise confidentiality in the investigation, due to the personal relationship between the Chief of Detectives at UCPO and Chief Matos of Clark PD.

13. In light of this, Plaintiff Manata had a well-placed fear of retaliation if he came forward. He therefore retained private counsel to protect his rights.

14. The Township's Policies and Procedures Manual (revised September 2018) states that employees who observe actions they believe to constitute harassment, sexual harassment or any other workplace wrongdoing should bring the matter to their own supervisor, or to the Business Administrator, or to the Municipal Attorney.

15. In accordance with this procedure, Plaintiff's then-counsel contacted the Municipal Attorney to report Plaintiff's discrimination claim.

16. The Township's Policy Prohibiting Discrimination, Harassment or Hostile Work Environment in the Workplace requires investigations to respect, to the extent possible, the privacy of the complaining party.

17. However, in this instance, Plaintiff Manata was not afforded privacy. During his first meeting with the Municipal Attorney, the Mayor appeared at the meeting and began berating Plaintiff.

18. The next time Plaintiff appeared at Clark PD headquarters, Chief Matos had him escorted from the building and banned him from returning.

19. At the Township's request, prelitigation settlement discussions followed. On **January 29, 2020**, Plaintiff entered into a settlement agreement with the Township of Clark, Mayor Salvatore Bonaccorso, Business Administrator John Laezza, Clark Police Department

Chief Pedro Matos, Clark PD Captain Vincent Concina and Clark PD Internal Affairs Sergeant Joseph Teston, the terms of which were confidential.

20. Since said date, the media has obtained copies of the settlement agreement, some of the audio recordings made by Plaintiff and a draft Complaint which was written but not filed on behalf of Plaintiff Manata.

21. On April 4, 2022, Mayor Bonaccorso publicly discussed the settlement at a Clark Township Council Meeting.

22. Portions of Plaintiff's recordings have been made available by third parties and are posted on YouTube (https://youtu.be/zXK9Wbj2aVE).

23. The facts listed above are relevant herein because they began the chain of events that led to the within litigation.

24. In **May or June of 2020**, approximately six months after the settlement agreement was signed, Lt. Brian O'Malley and another detective from Union County Prosecutor's Office Professional Standards Unit appeared at my client's home to question him about allegations of wrongdoing at Clark PD.

25. Plaintiff Manata advised them that he entered into a settlement agreement with the Township, which contained a confidentiality clause. Lt. O'Malley warned Plaintiff Manata not to tell them anything that would violate the agreement.

26. Plaintiff Manata called his then-attorney in the presence of Lt. O'Malley and the other detective, and relayed his attorney's advice that if Union County Prosecutor's Office wished to discuss Plaintiff's allegations further, they must issue a subpoena, which would allow Plaintiff to speak freely without violating the settlement agreement.

27. In the first week of **July 2020**, Plaintiff signed a Consent to Search Form, at the request of Union County Prosecutor's Office, which allowed them to view and listen to the contents of a cell phone and flash drives which Plaintiff turned over to the Township of Clark, as a condition of settlement.

28. Said cell phone and flash drives contained, among other things, the recordings which are now available on YouTube.

29. During the second week in **July 2020**, Lt. O'Malley and Defendant Hummel called Plaintiff on the phone. At Defendant Hummel's request, Plaintiff explained that he made the recordings on the cell phone and flash drives now in their possession, he explained how he did so and in what configuration the contents of the flash drives were saved (i.e., folders and number of audio and video recordings in each, etc.). Plaintiff also outlined what they would hear in each recording.

30. On **July 23, 2020**, Union County Prosecutor's Office took control of Clark PD.

31. On **July 27, 2020**, Plaintiff requested of UCPO that they allow him to view his Personnel Records, so that he could confirm the contents thereof were in accordance with the settlement agreement.

32. On **September 16, 2020**, UCPO denied this request.

33. On **October 30, 2020**, Plaintiff received a call from UCPO advising him that he was the subject of FIVE Internal Affairs investigations, as well as a criminal complaint for harassment, filed by Captain Concina.

34. UCPO alleges they "uncovered" these complaints because they reviewed Plaintiff's Personnel Records, since he requested to see said records himself.

35. UCPO advised Plaintiff that since he was still a Clark PD employee, he was required to appear at UCPO to undergo an Internal Affairs investigative interview.

36. On **November 2, 2020**, Plaintiff appeared at UCPO, and advised UCPO that he had been previously interviewed regarding these investigations, and exonerating evidence existed, which was in the possession of Clark PD and thus UCPO.

37. UCPO advised Plaintiff that they could not locate any of the exonerating evidence he was referring to, even though Plaintiff pointed UCPO to the exact location of the evidence, as well as the details of the prior investigation.

38. Immediately after said interview, Plaintiff met with Defendant Hummel, who confirmed that he was in possession of the recordings made by Plaintiff.

39. During that meeting with Defendant Hummel, Plaintiff explained that as part of his settlement agreement, the five open Internal Affairs investigations were supposed to be dropped. In response, Defendant Hummel advised Plaintiff that UCPO would not abide by the settlement agreement despite the fact that the investigations were administrative and thus UCPO was standing in the shoes of the Clark PD Internal Affairs Unit.

40. It is apparent to any objective reader that the Internal Affairs Complaints which were supposed to be dropped as part of the settlement agreement were the result of the harassment and discrimination Plaintiff complained of, which is why they were being dropped as part of the settlement. However, despite this knowledge, UCPO continued their investigations into Plaintiff.

41. The outcomes of the Internal Affairs investigations were never made known to Plaintiff by UCPO, in violation of the New Jersey Attorney General Internal Affairs Policies and Procedures ("IAPP").

42. **Over one year later**, through the undersigned counsel's correspondence chain with the Township of Clark's Municipal Attorney, Plaintiff finally became aware that he was exonerated in four of these investigations, one of the investigations was "sustained" by UCPO (although no disciplinary action was taken against Plaintiff) and the criminal complaint was dropped.

43. Notably, though all of this, UCPO never allowed Plaintiff to view his Personnel Records.

44. The reason for this refusal became clear on **September 23, 2021**, when Plaintiff was provided with his Personnel Records when same were demanded by counsel, and significant inaccuracies and outright falsehoods were discovered.

45. Plaintiff made these falsehoods and inaccuracies known to UCPO on several occasions, yet said records were never corrected by UCPO, nor was an investigation conducted by UCPO into the cause and culprit of the false records.

46. As a direct result of the false Personnel Records, Plaintiff was denied employment as a longshoreman, causing severe and significant monetary damage to Plaintiff.

47. On **January 10, 2022**, the New Jersey Police and Fire Retirement System ("PFRS") approved Plaintiff's pension commencing on March 1, 2022.

48. The very next day, **January 11, 2022**, Plaintiff was served with a Target Letter from UCPO, advising him he was being investigated for alleged violations of Clark PD policy regarding surreptitious recordings, failing to admonish or report derogatory language being used in his presence and an alleged attempt to obtain confidential internal affairs investigation

information. All of these alleged violations occurred **between January 1, 2017 and December 4, 2019**.

49. At the time Plaintiff was served with the Target Letter, his alleged infractions took place three to five years previously, UCPO had been in possession of the recordings for over two years, Plaintiff confirmed the recordings were his in writing, via the Consent to Search Form signed in July 2020, and Plaintiff verbally confirmed the recordings were his on at least three prior occasions commencing in July 2020. Yet, UCPO did not feel the need to issue a Target Letter pertaining to these recordings until one day after PFRS confirmed Plaintiff's retirement eligibility.

50. On **January 26, 2022,** Plaintiff appeared with counsel for an Internal Affairs investigative interview at UCPO, relating to the allegations in the Target Letter. Plaintiff was forthcoming and truthful, and he completely answered all of the interviewer's questions. Additionally, Plaintiff reiterated his complaint regarding his falsified Personnel Records and he reminded UCPO that he was scheduled to retire the following month.

51. On **February 21, 2022**, Plaintiff's counsel submitted correspondence to UCPO reminding them that Plaintiff's last date of employment with Clark PD was February 28, 2022. Counsel further reminded UCPO that they are investigating a whistleblower *because of* his whistleblowing activity, and in so doing they are violating the Conscientious Employee Protection Act.

52. On **February 28, 2022**, Clark Township's Municipal Attorney sent a letter to the undersigned counsel advising that as of the next day, Plaintiff would no longer be an employee of Clark PD and would thus no longer receive income or medical benefits through the Township;

however, due to the UCPO investigation, Plaintiff was not retiring in good standing and would therefore be ineligible to receive his pension benefits.

53. On **March 3, 2022**, the undersigned counsel sent correspondence to Defendant Hummel, reminding him that Plaintiff Manata had 25 years of service and was thus entitled to receive his pension, which was being denied because Defendant Hummel refused to close the investigation. Said correspondence reminded Defendant Hummel that Plaintiff was no longer a Township employee; therefore, no disciplinary action could be taken against him as the result of an administrative investigation. Therefore, Defendant Hummel and UCPO were preventing Plaintiff from collecting his pension for no discernable reason.

54. Defendant Hummel responded on the **same date**, sending the undersigned a correspondence stating that the investigation will be completed diligently and Plaintiff will be advised of the results.

55. On **March 22, 2022**, the undersigned sent Defendant Hummel another correspondence, reminding him that he had been conducting the same investigation since the summer of 2020, Plaintiff Manata answered questions regarding the same on three separate occasions and Defendant's refusal to close the investigation and allow Plaintiff to receive his pension appeared punitive on its face. Said correspondence reminded Defendant Hummel of the IAPP's time limitations for investigations, specifically § 6.1.4, which requires compliance with N.J.S.A. § 40A:14-147, requiring certain disciplinary charges to be filed within 45 days of the date the charging party obtained sufficient evidence to do so. By March 22, 2022, UCPO's 45-day window had long since expired.

56. To date, Defendant Hummel has never responded to said correspondence, nor has he closed the investigation into Plaintiff. Accordingly, to date, Plaintiff Manata has been unable to collect the pension he legally earned.

57. As a result of Defendants' wrongful conduct, Plaintiff Manata has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain and suffering, loss of reputation, loss of future employability and public humiliation. Further, Plaintiff has been compelled to file the within litigation to vindicate his rights. Additionally, Plaintiff has been otherwise injured.

## COUNT ONE
## VIOLATION OF 14th AMENDMENT OF THE
## UNITED STATES CONSTITUTION

58. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth at length herein.

59. The 14th Amendment of the United States Constitution, in salient part, forbids the State from making or enforcing any law which shall abridge the privileges or immunities of a citizen, nor shall any State deprive a person of life, liberty or property without due process of law, nor shall any State deny any person equal protection of the laws.

60. As described in the preceding paragraphs of this Complaint, Defendants have deprived and continue to deprive Plaintiff of his protected property interest in his pension benefits. In so doing, Defendants have violated the 14th Amendment of the United States Constitution.

61. As a result of Defendants' wrongful conduct, Plaintiff Manata has suffered and continues to suffer severe and substantial monetary damages, as well as emotional distress, pain

and suffering, loss of reputation, loss of future employability and public humiliation. Further, Plaintiff has been compelled to file the within litigation to vindicate his rights. Additionally, Plaintiff has been otherwise injured.

**WHEREFORE,** Plaintiff Manata demands judgment against Defendants, jointly or severally, for the following relief:

   i. Compensatory Damages, together with pre-judgment and post-judgment interest thereon;
  ii. Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
 iii. An award of Compensatory Damages for pain and suffering;
  iv. An award of Punitive Damages;
   v. An award of attorney's fees and costs of suit; and
  vi. Any such other relief that this Honorable Court deems equitable and just.

## COUNT TWO
### Violation of 42 U.S.C. § 1983
### (Defendant Hummel only)

62. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth at length herein.

63. As described in the preceding paragraphs of this Complaint, Defendant Hummel while acting under the color of law, has deprived and continues to deprive Plaintiff Manata of his protected property interest in his pension benefits, thereby violating the 14th Amendment of the United States Constitution.

64. As a result of Defendant Hummel's actions, Plaintiff Manata has suffered, and continues to suffer, severe and significant monetary damages and severe emotional distress. Plaintiff has also suffered other, additional damages. Moreover, Plaintiff Manata has been

compelled to file the within litigation to vindicate his rights.  Additionally, Plaintiff Manata has been otherwise injured.

**WHEREFORE**, Plaintiff Manata demands judgment against Defendant Hummel for the following relief:

   i.   Compensatory Damages, together with pre-judgment and post-judgment interest thereon;
  ii.   Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
 iii.   An award of Compensatory Damages for pain and suffering;
  iv.   An award of Punitive Damages;
   v.   An award of attorney's fees and costs of suit; and
  vi.   Any such other relief that this Honorable Court deems equitable and just.

## COUNT THREE
### VIOLATION OF CONSCIENTIOUS EMPLOYEE PROTECTION ACT
### N.J.S.A. § 34:19-1, *et seq.* ("NJ WHISTLEBLOWER ACT")

65. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth at length herein.

66. When Plaintiff recorded the Township's elected mayor and Chief of Police using racist and derogatory language to describe the way police investigations are conducted and then provided that evidence to the Municipal Attorney (after the Prosecutor's Office discouraged him from coming forward), Plaintiff "blew the whistle" on conduct that Plaintiff believed in good faith to be illegal, unsafe, against Township policy, against public policy and/or a matter of public importance.

67. Defendants have taken no action against any of the individuals recorded by Plaintiff, despite overwhelming evidence of improper and illegal conduct captured on Plaintiff's recordings.

68. Instead, Defendants have taken and continue to take adverse employment action against Plaintiff because Plaintiff blew the whistle. Specifically, Defendants named Plaintiff Manata as the target of an administrative investigation based on his whistleblowing activity over 18 months after Plaintiff admitted to such activity and then they refused to close the investigation into Plaintiff even though (a) Defendants are well outside of the time requirements to charge Plaintiff with a disciplinary action; and (b) Plaintiff is no longer subject to administrative discipline, since he is no longer a Township employee. By their actions, Defendants have violated and continue to violate the Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, *et seq.*

69. As a result of Defendants' actions, Plaintiff Manata has suffered, and continues to suffer, severe and significant monetary damages and severe emotional distress. Plaintiff has also suffered other, additional damages. Moreover, Plaintiff Manata has been compelled to file the within litigation to vindicate his rights. Additionally, Plaintiff Manata has been otherwise injured.

**WHEREFORE**, Plaintiff Manata demands judgment against Defendants for the following relief:

   i. Compensatory Damages, together with pre-judgment and post-judgment interest thereon;
  ii. Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
 iii. An award of Compensatory Damages for pain and suffering;
  iv. An award of Punitive Damages;
   v. An award of attorney's fees and costs of suit; and
  vi. Any such other relief that this Honorable Court deems equitable and just.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint, as if set forth at length herein.

71. As described in the preceding paragraphs of this Complaint, Defendants acted intentionally and purposefully to cause Plaintiff Manata emotional distress and injury, and/or Defendants acted recklessly, in deliberate disregard of a high degree of probability that emotional distress would follow.

72. Defendants' conduct was so extreme in degree and outrageous in character as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

73. Defendant's actions were the proximate cause of Plaintiff's emotional distress.

74. The emotional distress suffered by Plaintiff was so severe that no reasonable person could be expected to endure such distress. As such, Defendant's conduct was sufficiently severe to cause genuine and substantial emotional distress or mental harm to the average person similarly situated to Plaintiff Manata.

75. As a result of Defendants' actions, Plaintiff Manata has suffered, and continues to suffer, severe and substantial emotional distress and injury.

**WHEREFORE**, Plaintiff Manata demands judgment against Defendants for the following relief:

  i. Compensatory Damages, together with pre-judgment and post-judgment interest thereon;
 ii. Additional consequential and incidental damages, in a sum to be determined at trial, together with pre-judgment and post-judgment interest thereon;
iii. An award of Compensatory Damages for pain and suffering;
 iv. An award of Punitive Damages;
  v. An award of attorney's fees and costs of suit; and
 vi. Any such other relief that this Honorable Court deems equitable and just.

## DUTY TO PRESERVE

Defendants are officially on notice of the legal duty to preserve any and all evidence relevant to the within action, including any electronic or written communication, comprising but not limited to emails, letters, correspondence, memoranda, notes, journal entries, social media (Facebook, Twitter, LinkedIn, etc.) status updates, tweets, text messages, instant messages, audio or video recordings, phone messages, voicemails, business documents, personnel files, financial records and notes relating to said records, or any other documents or records of whatsoever nature or kind in general relating to or mentioning Plaintiff Manata.  Should Defendants or any representatives thereof intentionally, recklessly, negligently or inadvertently destroy, alter, amend, change or adjust any of the above-referenced materials, including electronic correspondence between Plaintiff and any Defendant or employee/agent thereof, sanctions will be sought in this litigation and an additional claim for spoliation/negligent concealment will be instituted.

## DESIGNATION OF TRIAL COUNSEL

VALERIE PALMA DELUISI, ESQ. is hereby designated as Trial Counsel for Plaintiff Antonio Manata.

## TRIAL BY JURY

Plaintiff hereby requests trial by jury as to all matters so triable.

## **CERTIFICATION**

The undersigned attorney for Plaintiff Antonio Manata hereby certifies that to the best of her knowledge, information and belief, the matter is controversy is not the subject of any action and/or arbitration proceeding other than stated above, nor is any other action or arbitration proceeding contemplated at this time.

The undersigned further certifies that to the best of her knowledge, information and belief, no other party should be joined in the within action at this time.  However, Plaintiff reserves his right to amend this Complaint as continuing discovery may reveal further causes of action and/or additional defendants with personal liability to Plaintiff.


Respectfully Submitted,
**LAW OFFICES OF NICHOLAS J. PALMA, ESQ., P.C.,**
*Attorneys for Plaintiff Antonio Manata*

Dated: April 7, 2022          By:  /s/*Valerie Palma DeLuisi*
                                   Valerie Palma DeLuisi, Esq.