NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO MANATA,<br><br>                    Plaintiff,<br><br>v.<br><br>UNION COUNTY PROSECUTOR'S OFFICE, *et al.*,<br><br>                    Defendants. | Civil Action No.: 22-2005<br><br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion to dismiss plaintiff Antonio Manata's ("Plaintiff") amended complaint (ECF No. 27) ("AC") filed by defendants Union County Prosecutor's Office ("UCPO"), State of New Jersey Office of the Attorney General ("OAG"), Matthew J. Platkin, and Richard Burke (ECF Nos. 85), as well as the motion to dismiss filed by defendant David Hummel (ECF No. 87) (collectively, "Defendants").[1] Plaintiff opposed both motions (ECF Nos. 96, 97) and Defendants replied in support (ECF Nos. 100, 101).[2] The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motions are **GRANTED**.

**I.     BACKGROUND**

      **A.  Factual History**

Plaintiff was employed as a Lieutenant in the Clark Police Department for 25 years until his scheduled retirement in February 2022. AC ¶ 1. At some point prior to September 2019,

---

[1] The individual defendants are sued both in their personal and official capacity. The official capacities in which they are named are as follows: Hummel as the Assistant Prosecutor and Legal Chief of the Investigative Division of the UCPO, Platkin as the Attorney General of the State of New Jersey, and Burke as the Assistant Attorney General assigned to Office of Public Integrity and Accountability. AC ¶¶ 3, 5, 6.
[2] For ease of analysis, the Court considers the motions together.

Plaintiff began covertly recording his conversations with fellow members of the Clark Police Department and others—including Clark Township Mayor Salvatore Bonaccorso, Chief of Clark Township Police Department Pedro Matos, and Clark Police Department Captain Vincent Concina—in order to "document incidents of prohibited discrimination and harassment." *Id.* ¶ 14. Plaintiff then contacted the town's Municipal Attorney to file a discrimination complaint based on the evidence collected through his recordings. *Id.* ¶¶ 17-18. After meeting with the Municipal Attorney, Plaintiff was allegedly escorted from police headquarters and banned from returning to work for the Clark Police Department. *Id.* ¶ 21. Plaintiff subsequently entered into a confidential settlement agreement in January 2020 with Clark Township, Mayor Bonaccorso, Chief Matos, and others. *Id.* ¶ 23. Under the terms of that agreement, Plaintiff was placed on administrative leave from the Clark Police Department but was allowed to retain his status as an employee until his scheduled retirement. *Id.* ¶ 24.

About six months after this agreement was signed, Plaintiff was questioned by the UCPO regarding his allegations against the Clark Police Department. *Id.* ¶ 25. The UCPO then exercised its supersession authority in June 2020 to assume control of the law enforcement and internal affairs functions of the Clark Police Department. *Id.* ¶ 30. On October 30, 2020, Plaintiff was contacted by the UCPO, which relayed that he was the subject of five Internal Affairs investigations and one criminal complaint. *Id.* ¶ 34. Plaintiff responded by contacting defendant Hummel, Assistant Prosecutor and Legal Chief of the Investigative Division of the UCPO, and stating that the five internal affairs investigations against him were meant to be dropped as part of his confidential settlement agreement with Clark Township. *Id.* ¶ 40. Hummel allegedly "advised Plaintiff that UCPO would not abide by the settlement agreement." *Id.* Plaintiff was later informed,

over a year later, that the criminal complaint against him was dropped, while four of the Internal Affairs investigations ended in exoneration and one was sustained. *Id.* ¶ 43.

On January 11, 2022, shortly after being approved for a pension upon his scheduled retirement, Plaintiff was informed by the UCPO that he was the subject of another Internal Affairs investigation for alleged violations of Clark Police Department policy related to his recordings. *Id.* ¶¶ 48-49. After retiring on February 28, 2022, Plaintiff was told by the Municipal Attorney that, due to the investigation, he was not retiring in good standing and was therefore ineligible to receive his pension benefits. *Id.* ¶ 53. Plaintiff responded by sending letters to Hummel requesting that he close the investigation which, according to Plaintiff, remained open "for no discernable reason." *Id.* ¶¶ 56-57. Hummel allegedly did not reply. *Id.* ¶ 58.

Plaintiff then filed the present lawsuit against defendants UCPO and Hummel on April 7, 2022. *Id.* ¶ 59. Shortly thereafter, the OAG, through its Office of Public Integrity and Accountability ("OPIA") assumed control of the Internal Affairs investigation into Plaintiff due to the pending lawsuit. *Id.* ¶ 60. In October 2022, upon the request of OPIA, Plaintiff sat for a witness interview in connection with an Attorney General investigation into the Clark Police Department and Clark Township. *Id.* ¶¶ 63-66. There, Plaintiff learned that defendant Burke was leading the Internal Affairs investigation into his past conduct. *Id.* ¶¶ 64, 67. Plaintiff asked an OPIA employee to contact Burke, who allegedly refused to provide assurances that statements made during the interview would not be used against him in the Internal Affairs investigation. *Id.* ¶¶ 69-70. Plaintiff decided to refuse to "answer questions directly," and instead provided a proffer of testimony he would give once the Internal Affairs investigation was closed. *Id.* ¶ 72.

As of the filing of his amended complaint on November 23, 2022, the Internal Affairs investigation into Plaintiff was still ongoing.[3] *Id.* ¶ 73. Consequently, Plaintiff has been unable to collect his pension that was scheduled to begin upon his retirement. *Id.* ¶¶ 73, 82-83. Plaintiff claims that there is no reason for the investigation to continue, and that it is only being prolonged to "punish the whistleblower." *Id.* ¶¶ 76-80. He asserts injuries including monetary damages, emotional distress, and loss of reputation, and seeks both compensatory and punitive damages. *Id.* ¶ 88.

### B. Procedural Background

Plaintiff filed his initial complaint on April 7, 2022, naming Hummel and the UCPO as defendants. ECF No. 1. Plaintiff then filed his amended complaint on November 23, 2022, naming all Defendants. ECF No. 27. He now asserts claims against Hummel, Platkin, and Burke[4] under 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendment, *Id.* ¶¶ 89-94, and claims against all Defendants under the New Jersey Civil Rights Act for violation of his substantive due process and equal protection rights. *Id.* ¶¶ 107-08. He also alleges a violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq.*, and a civil conspiracy amongst all Defendants. Defendants seek to dismiss all counts for failure to state a claim pursuant to Rule 12(b)(6). ECF Nos. 85, 87.

## II. STANDARD OF REVIEW

### A. Failure to State a Claim (Rule 12(b)(6))

---

[3] Defendants claim in their motion to dismiss that any investigations into Plaintiff have since concluded. ECF No. 85 at n.1; *see* ECF No. 85-2, Ex. A (copy of public report detailing findings of investigation into Clark Township and Clark Township Police Department leadership).
[4] As noted, claims against the individual defendants are made against both their personal and professional capacities.

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Factual allegations must support a right to relief that is more than speculative. *Twombly*, 550 U.S. at 555. A complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement,'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The party seeking dismissal under Rule 12(b)(6) bears the burden of demonstrating that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

### III. DISCUSSION

#### A. Sovereign Immunity

##### a. OAG, Burke, and Platkin

Claims against the OAG, as well as Burke and Platkin in their official capacities, are barred by sovereign immunity. Pursuant to the Eleventh Amendment of the United States Constitution, a state is "generally entitled to immunity in federal court from suits by private parties." *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.") (internal quotations omitted). This immunity from suit further "extends to state agencies as well as state officials sued in their official capacities for monetary damages." *A.W.*, 341 F.3d at 238; *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 100-103. Here, the OAG is a state agency and is accordingly immune from

5

private suit. *Malcomb v. Beaver Cnty. Penn. (Prothonotary)*, 616 Fed. Appx. 44, 45 (3d Cir. 2015) ("[T]he Attorney General's Office [is] immune from suit under the Eleventh Amendment."); *Wattie-Bey v. Att'y Gen.'s Off.*, 424 Fed. Appx. 95, 98 (3d Cir. 2011) (dismissing claims against Attorney General's Office because "claims against . . . state agencies named as defendants are precluded under the Eleventh Amendment"). Burke and Platkin, employees of the OAG, are state officials and are likewise immune from suit for monetary damages. *See Jaye v. Att'y Gen. N.J.*, 706 Fed. Appx. 781, 784 (3d Cir. 2017) ("[T]he New Jersey Attorney General and Deputy Attorney General are immune from suit for money damages under the Eleventh Amendment."); *Sexton v. N.J. Dep't of Corr.*, No. 21-20404, 2024 WL 4615763, at *7 (D.N.J. Oct. 30, 2024) (noting that "courts have consistently held" that the New Jersey OAG and its employees "are shielded from liability under the Eleventh Amendment"). Because the OAG, as well as Burke and Platkin in their official capacities, are immune from private monetary damage suits under the Eleventh Amendment, all claims against them are dismissed.[5]

    b. UCPO

The Section 1983, NJCRA and civil conspiracy claims against the UCPO and Hummel in his official capacity are also barred by sovereign immunity. Eleventh Amendment sovereign immunity applies to claims against non-state parties—such as a county agency—when the state is the "real party-in-interest." *Chisolm v. McManimon*, 275 F.3d 315, 322 (3d Cir. 2001). To determine whether a state is the "real party-in-interest," courts look to three factors: "(1) whether

---

[5] Plaintiff argues that the Eleventh Amendment does not apply here because the OAG was not investigating "criminal activities" but rather undertaking an "administrative" action, thus acting outside its "normal scope." ECF No. 98 at 12-14. However, Plaintiff does not provide case law to support this distinction, which cannot be squared with precedent that the OAG is "indisputably . . . entitled to Eleventh Amendment immunity." *Hockaday v. N.J. Att'y Gen.'s Off.*, No. 16-0762, 2016 WL 6694483, at *6 (D.N.J. Nov. 14, 2016); *see Sexton*, 2024 WL 4615763, at *7 (noting that immunity from suit for the OAG and its employees' "is not subject to reasonable dispute").

payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." *Id.* at 323. These factors are co-equal and are balanced to determine "whether an entity amounts to an arm of the State." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016). Here, each factor indicates that the UCPO, and therefore Hummel in his official capacity, was acting as an "arm of the state" when pursuing the conduct at issue, and Plaintiff's Section 1983, NJCRA, and civil conspiracy claims against both parties are accordingly dismissed.

The first factor, whether payment of a judgment will come from the state treasury, favors immunity. Under New Jersey law, the State of New Jersey is obligated to indemnify county prosecutor's offices "for tortious conduct committed during the investigation, arrest, and prosecution of" a plaintiff absent the presence of actual fraud, malice, or willful misconduct.[6] *Wright v. State*, 169 N.J. 422, 465 (2001) (citing N.J.S.A. §§ 59:10A, 59:10-2); *see Laniado v. Cnty. of Ocean*, No. 18-1513, 2018 WL 6171820, at *4 (D.N.J. Nov. 26, 2018). Acknowledging this rule, the OAG has agreed here to represent and, if necessary, indemnify the UCPO and Hummel. ECF No. 85-2, Ex. B at 3-4. Considering this state law obligation and the OAG's agreement, the first factor favors immunity. *See Hof v. Janci*, No. 17-295, 2017 WL 3923296, at *3 (D.N.J. Sept. 7, 2017) (finding first factor favors immunity given "the State's obligations" under *Wright* and its "agreem[ent] to represent and indemnify" the county defendants).

The second factor, the status of the entity under state law, also favors immunity. "Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, 'they act as agents of the state.'" *Hof*, 2017 WL 3923296, at *4 (quoting

---

[6] Notably, the OAG is vested with the authority to determine whether the fraud, malice, or willful misconduct exception applies. *In re Camden Police Cases*, No. 11-1315, 2011 WL 3651318, at *5 (D.N.J. Aug. 18, 2011) ("Although the Attorney General may 'refuse to provide for the defense of the action' if the official acted willfully or maliciously, [state law] expressly authorizes the Attorney General to determine whether that exception applies.").

*Hyatt v. Cnty. of Passaic*, 340 Fed. Appx. 833, 836 (3d Cir. 2009)). Here, Plaintiff's claims involve law enforcement and prosecutorial functions exercised by the UCPO and Hummel, including the investigation of alleged misconduct by the Plaintiff. *See, e.g.*, AC ¶ 34. Because the UCPO and Hummel were enforcing state law and thus acting as agents of the state when performing the allegedly unlawful actions, this factor favors immunity. *See Pitman v. Ottehberg*, No. 10-2538, 2015 WL 179392, at *7 (D.N.J. Jan. 14, 2015) (finding second factor favors immunity where county prosecutor was "acting in connection with the enforcement of state laws" and thus both prosecutor and his office were acting as "agents of the State at the time of the alleged wrongful conduct").[7]

Finally, the third factor, the entity's degree of autonomy, further favors immunity. Under New Jersey law, the Attorney General "is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors." *Pitman*, 2015 WL 179392, at *7 (citing N.J. Stat. Ann. § 52:17B-106). Considering this extensive oversight authority by an arm of the state, the UCPO cannot be viewed as an autonomous entity when, as here, it is "performing its prosecutorial function, such as investigating." *Id.*; *see Laniado*, 2018 WL 6171820, at *5 ("The . . . County Prosecutor's Office, when acting in a prosecutorial capacity, is not an autonomous entity." (internal quotation omitted)). This factor thus favors immunity.[8]

In sum, all three factors favor a finding that the state is the "real party-in-interest" and that the relevant claims are barred by sovereign immunity. Indeed, other courts in this district have

---

[7] Plaintiff argues that UCPA's investigation was "administrative, not criminal" and thus did not involve "prosecutorial functions." ECF No. 98 at 14-16. However, "administrative tasks" for the purposes of the "party-in-interest" analysis relate to "personnel decisions," not investigations and other functions that "require legal knowledge and discretion." *Hyatt*, 340 Fed. Appx. at 836-37 (internal quotations omitted).
[8] Echoing his previous argument, Plaintiff asserts that because the UCPA was undertaking an "administrative investigation," rather than probing criminal wrongdoing, it is "autonomous from the dealings of the State." ECF No. 98 at 16-17. However, even assuming that Defendants' investigation was somehow "administrative" in nature, Plaintiff does not provide statutory language or case law to support a corresponding lack of autonomy as a result.

similarly concluded that county prosecutor's offices are entitled to sovereign immunity when pursuing investigations or prosecutions. *See, e.g., Est. of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 267 (D.N.J. 2021) ("Courts in this district have routinely held that county prosecutors, when pursuing their core functions, are entitled to Eleventh Amendment immunity."). The relevant claims are accordingly dismissed.

### B. Section 1983 and NJCRA

#### a. Hummel

Plaintiff's Section 1983 and NJCRA claims against Hummel in his personal capacity fail because Hummel is entitled to qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, qualified immunity will shield a government official from suit unless a plaintiff alleges facts showing (1) a violation of a right that is (2) clearly established at the time of the violation. *See id.* This standard applies to both Section 1983 and NJCRA claims. *See Olexsak v. Jones*, No. 21-20026, 2022 WL 2980985, at *6 (D.N.J. July 28, 2022) (citing *Brown v. State*, 230 N.J. 84, 98 (2017)). Here, Plaintiff does not plead sufficient facts to overcome qualified immunity and his claims are accordingly dismissed.

First, Plaintiff fails to plead a due process violation under the Fourteenth Amendment because he does not possess a protected property interest in his pension benefits. To state a due process claim, a plaintiff must allege that he was "deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property.'" *Pence v. Mayor of Bernard Twp.*, No. 8-2312, 2010 WL 2925901, at *3 (D.N.J. July 21, 2010) (quoting

9

*Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)). Whether a property interest is so protected "is a question answered by state law." *Hill*, 455 F.3d at 234. Under New Jersey law, pension benefits are "expressly conditioned upon the rendering of honorable service." N.J.S.A. 43:1-3; *see Vas v. Bd. of Trs., Pub. Emps.' Ret. Sys. of N.J.*, No. 2848-21, 2023 WL 4198994, at *3 (N.J. Super. Ct. App. Div. June 26, 2023). As Plaintiff himself states, he did not "retir[e] in good standing" due to the Internal Affairs investigation into his conduct, and he was therefore "ineligible to receive his pension benefits." AC ¶ 53. Accordingly, these benefits do not constitute a protected property interested under state law of which Plaintiff has been deprived and cannot therefore serve as the basis for a due process claim. *See State v. Anderson*, 248 N.J. 53, 75 (2021) (noting that the "pre-condition of honorable service" renders state pension a "conditional quasi-contractual right" rather than "'property' of the employee"); *Vas*, 2023 WL 4198994, at *2.

Second, Plaintiff fails to plead an alleged First Amendment violation that is "clearly established." Plaintiff alleges that Hummel violated his First Amendment right by "commencing and then refusing to close an Internal Affairs investigation into Plaintiff based on" his alleged protected speech. AC ¶ 93. However, an allegedly retaliatory investigation is not a "clearly established" First Amendment violation for purposes of overcoming qualified immunity. *See Sivella v. Twp. of Lyndhurst*, No. 20-2342, 2021 WL 3356934, at *3 (3d Cir. 2021) (noting that there "remains a circuit split on the relevant issue"); *Holt v. Pennsylvania*, 683 Fed. Appx. 151, 160 (3d Cir. 2017) (holding that official is entitled to qualified immunity on a First Amendment retaliatory investigation claim because of "[t]he disagreement among our sister courts" regarding the viability of such a claim). Thus, the alleged retaliatory investigation cannot serve as a basis for a First Amendment claim.

Third, Plaintiff fails to plead a substantive due process claim under the NJCRA because he does not allege actions taken by Hummel that are sufficiently egregious to satisfy the applicable standard. "[A]s the Supreme Court of New Jersey has described, 'substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that shock the conscience or otherwise offend . . . judicial notions of fairness.'" *Rapeika v. Borough of Fort Lee*, No. 19-6612, 2020 WL 6391202, at *7 n.11 (D.N.J. Oct. 30, 2020) (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 366 (1996)). Here, Plaintiff alleges that Hummel—an employee of the UCPO—did not abide by a settlement agreement entered into by the Plaintiff and the Clark Police Department, AC ¶ 40, and "refused to close" an Internal Affairs investigation into the Plaintiff, ¶¶ 53, 57-58. However, Plaintiff does not point the Court to any case in which this type of behavior—an alleged refusal to abide by a settlement agreement entered into by another entity and an alleged refusal to close an ongoing Internal Affairs investigation—has been deemed to "shock the conscience" or offend judicial notions of fairness. *Cf. Beauvil v. City of Asbury Park*, No. 18-991, 2018 WL 2455928, at *3 (D.N.J. June 1, 2018) (holding NCJRA substantive due process properly plead where plaintiff "alleged that Defendants effected a deprivation of property due to some combination of racial animus, hostility towards Plaintiffs' national origin, and/or personal bias"); *see also Rivkin*, 143 N.J. at 366 (noting that violations of substantive due process often involve "intrusions on an individual's privacy and bodily integrity"). Thus, the alleged conduct fails to establish a substantive due process claim under the NJCRA.

Finally, Plaintiff fails to plead an equal protection claim under the NJCRA because he does not allege the necessary requirements. To plead an equal protection claim, plaintiffs "must show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the

unprotected class." *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 391-92 (D.N.J. 2011). Here, Plaintiff neither alleges that he is a member of a protected class, nor points to a member of an unprotected class that is similarly situated but treated differently. Moreover, Plaintiff's opposition brief does not address this pleading failure. ECF No. 96 at 15-16. Plaintiff's equal protection claim against Hummel is accordingly dismissed.

      b. Burke and Platkin

The Section 1983 and NCJRA claims against Burke and Platkin in their personal capacities fail because Plaintiff has not plead with adequate specificity any personal involvement of either defendant with the alleged violation of his civil rights. To be liable under Section 1983, a defendant "must have personal involvement in the alleged wrongs" as shown by "[a]llegations of participation or actual knowledge and acquiescence . . . made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir.) (noting that to establish a Section 1983 claim, "[a] plaintiff must portray specific conduct by state officials which violates some constitutional right" (internal quotation omitted)). The NJCRA is construed identically. *See Glaesener v. City of Jersey City*, No. 19-18089, 2021 WL 4206297, at *3 (D.N.J. Sept. 15, 2021). Here, Plaintiff does not allege specific actions performed by Platkin, but only refers to the actions of the office he leads, the OAG. *See* AC ¶¶ 60-88. As to Burke, Plaintiff alleges that he was "leading the Internal Affairs investigation," *id.* ¶¶ 67, 81, and that he "refused to provide any . . . assurances" that statements made by Plaintiff during his witness interview would not be used against him in that investigation, *id.* ¶¶ 69-70. These allegations regarding both defendants are insufficient because they do not identify acts performed by the defendants that violated Plaintiff's civil rights, and instead seek to impute liability based on defendants' job positions. *See Hodges v. Mankey*, 651 Fed. Appx. 81, 83 (3d Cir. 2016)

12

("Defendants in civil rights actions must have personal involvement in the alleged wrongs; any liability cannot be based only on respondeat superior." (internal quotation omitted)); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) ("The liability of a defendant in a Section 1983 civil rights action cannot be predicated solely on *respondeat superior*, there must be personal involvement."). Accordingly, the Section 1983 and NJCRA claims against Burke and Platkin fail.[9]

Further, in light of Plaintiff's failure to plead any personal involvement by defendants in the alleged violations of his civil rights, Burke and Platkin are entitled to qualified immunity for the above claims. *See Argueta v. U.S. Immigr. and Customs Enf't*, No. 8-1652, 2009 WL 1307236, at *22 (D.N.J. May 7, 2009) ("In order to overcome qualified immunity, a plaintiff must allege facts to show that an individual defendant had personal involvement in the alleged wrongdoing."); *Reed v. Straniero*, No. 6-3496, 2010 WL 2035887, at *5 (D.N.J. May 24, 2010) (finding qualified immunity applies "where Defendants have had no personal involvement" in the alleged constitutional violation).

### C. CEPA

The CEPA claim against all Defendants fails because Plaintiff does not plead the necessary elements, including the existence of an "adverse employment action" and an employer-employee relationship between himself and Defendants. To state a claim under CEPA, a plaintiff must plead "(1) that the plaintiff reasonably believed that employer's conduct violated a law or regulation; (2) that the plaintiff performed 'whistle-blowing activity' as defined in CEPA; (3) that an adverse employment action has been taken against him or her; and (4) that the whistle-blowing activity

---

[9] In his opposition, Plaintiff states that "[t]hrough acquiescence, ignorance, and/or negligence, both parties have person[al] involvement in this matter." ECF No. 98 at 19. Plaintiff does not, however, point to allegations in the complaint to establish this alleged personal involvement. Moreover, any allegations found in Plaintiff's brief, but not the amended complaint, will not be considered on a motion to dismiss. *See Dickerson v. N.J. Inst. of Tech.*, No. 19-8344, 2019 WL 6032378, at *6 n.4 (D.N.J. Nov. 14, 2019) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

caused such adverse employment action." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 466 (D.N.J. 2009). Additionally, a plaintiff must establish "a legitimate employee-employer relationship between the parties." *Kounelis v. Sherrer*, 396 F. Supp. 2d 525, 532 (D.N.J. 2005).

Initially, Plaintiff fails to plead that an adverse employment action was taken against him. Plaintiff alleges that Defendants have undertaken an adverse employment action by initiating an Internal Affairs investigation into his actions. AC ¶ 100. However, an investigation into employee behavior does not qualify as an adverse employment action under CEPA. *See Ust v. Borough of Englewood Cliffs*, No. 17-13051, 2018 WL 4145905, at *4 (D.N.J. Aug. 30, 2018) ("Nor is filing an internal affairs complaint against him an adverse employment action. CEPA prohibits retaliatory action, and an investigation of an employee is not normally considered retaliation.") (internal citation and quotation omitted); *see also Borawski v. Henderson*, 265 F. Supp. 2d 475, 486 (D.N.J. 2003) ("Retaliatory action under CEPA is confined to completed . . . personnel actions that have an effect on either compensation or job rank" (internal quotation omitted)). Because Plaintiff does not establish this necessary element, the CEPA claim fails.

Additionally, Plaintiff fails to plead the existence of an employee-employer relationship between himself and the Defendants. According to his amended complaint, Plaintiff was an employee of the Clark Police Department during the relevant period. AC ¶ 1. Defendants are not supervisors at the Clark Police Department, but rather employees of the OAG or the UCPO, or those entities themselves. *See id.* ¶¶ 2-6. Although Plaintiff asserts that Defendants "became Plaintiff's employer" when they exercised supersession authority over the Clark Police Department and assumed control of the internal affairs investigation, *id.* ¶¶ 97-98 this conclusory assertion is not supported by the pleadings and is thus insufficient to establish the necessary relationship. *See Iliano v. Wayne Bd. of Ed.*, No. 22-114, 2022 WL 4596729, at *3 (D.N.J. Sept.

30, 2022) (finding no employee-employer relationship for purposes of CEPA claim where "[t]he Complaint does not set forth facts establishing that the [defendant] carried out its actions on behalf of or in the interest of Plaintiff's employer").

### D. Civil Conspiracy

The civil conspiracy claim against all Defendants fails because Plaintiff has not complied with the New Jersey Tort Claims Act. Under that act, "an individual may not sue a public entity or public employee unless he provides the entity or employee with a pre-suit notice of the claim." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 549 (D.N.J. 2013) (citing N.J.S.A. 59:8-3). Plaintiff has not plead compliance with the pre-suit notice requirement and does not appear to contest as much in his opposition brief.[10] ECF No. 98 at 25-26. Because failure to comply with this requirement is "an absolute bar to recovery," the civil conspiracy claim is dismissed. *Martin*, 965 F. Supp. 2d at 549 (citing N.J.S.A. 59:8-8); *Hashem v. Hunterdon Cnty.*, No. 15-8585, 2016 WL 5539590, at *11 (D.N.J. Sept. 29, 2016).

The civil conspiracy claim fails for the additional reason that Plaintiff has not pled the existence of an underlying tort to support the claim. Under New Jersey law, civil conspiracy "is not an independent action but rather a means for establishing vicarious liability for the underlying tort." *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 232 (D.N.J. 2021) (internal quotation omitted). Because Plaintiff has not adequately pled the existence of a tortious action committed by Defendants, the civil conspiracy claim cannot stand on its own. *See 7-Eleven, Inc. v. Maia Investment Co.*, No. 14-8006, 2015 WL 1802512, at *6 (D.N.J. Apr. 17, 2015) ("Without an underlying wrong, [the plaintiff]

---

[10] Plaintiff does not appear to contend that he complied with the Tort Claims Act, but instead argues that this failure should only result in dismissal of his claims against the public entities and not the individual defendants. ECF No. 98 at 25. However, the statute broadly bars claims made without notice against a "public entity *or public employee*." *Martin*, 965 F. Supp. 2d at 549 (emphasis added).

cannot state a claim for conspiracy."); *In re: Johnson & Johnson*, 553 F. Supp. 3d at 232-33 ("Because Plaintiffs have failed to show that [the defendant] committed an underlying tortious act, Plaintiffs cannot proceed with a civil conspiracy claim.").

## IV. <u>CONCLUSION</u>

For the reasons stated above, Defendants' motions to dismiss are granted.

**Accordingly, IT IS** on this 28th day of January, 2025,

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 85, 87) Plaintiff's amended complaint (ECF No. 27) are **GRANTED**; and it is further

**ORDERED** that Plaintiff's amended complaint is **DISMISSED** without prejudice; and it is further

**ORDERED** that to the extent Plaintiff is able to cure the pleading deficiencies identified in the Court's Order, he shall have thirty (30) days from the date of this Order to file a second amended complaint. Insofar as Plaintiff submits a second amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the original amended complaint, bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

*/s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**